**Bradley DEBRASKA, et al. Plaintiffs,**

v.

**CITY OF MILWAUKEE, Defendant.**

No. 96–CV–402.

United States District Court,
E.D. Wisconsin.

Sept. 26, 2000.

Michael T. Leibig, Zwerdling Paul Leibig Kahn, Thompson & Wolly, Alexandria, VA, Laurie A. Eggert, Eggert Law Offices, Milwaukee, WI, for Plaintiffs.

Gregory Powell, Milwaukee City Attorney's Office, Milwaukee, Rudolph M. Konrad, Stuart Mukamal, Milwaukee City Attorney's Office, Milwaukee, WI, for Defendants.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

The Fair Labor Standards Act ["FLSA"], 29 U.S.C. § 201 *et seq.*, permits States and their political subdivisions, unlike private employers, to pay their employees for overtime by granting them compensatory time or "comp time" (time off work with full pay) instead of cash. § 207(*o*). Once an employee has earned comp time, the Act grants the employee a qualified right to use the time off when he chooses. The state or municipal employer must grant an employee's request "to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency." § 207(*o*)(5).

The plaintiffs, almost 1900 current and former Milwaukee police officers, contend that the defendant, the City of Milwaukee, violates this provision by turning down requests for comp time on occasions when granting the request would not cause undue disruption. The city's policy is to turn down requests to use comp time if granting the request would require it to pay replacement officers overtime or to call in replacements from another shift or precinct. The city argues that this policy does not violate the FLSA because whenever it cannot grant requests to use comp time on the specific date requested, it allows the use of comp time on an alternative date within one week of that date. Thus the requests to use comp time are granted within a "reasonable period", the city contends, and for this reason the court

need not consider the issue of undue disruption.

The parties raised this issue previously in cross motions for summary judgment on the issue of liability, but I declined to address the merits on grounds of claim preclusion and granted the defendant's motion for summary judgment. The court of appeals for the seventh circuit has reversed that determination and remanded the case for a decision on the issue. *De-Braska v. City of Milwaukee*, 189 F.3d 650, 654 (7th Cir.1999). At this court's invitation, the Secretary of Labor has filed an amicus brief, in which it agrees with the plaintiffs' interpretation of the statute. The court thanks the Secretary and the parties for the high quality of their briefs.

The second and final issue for the court to decide, at the direction of the court of appeals, is whether the Milwaukee Police Association ["MPA"] violated a 1990 settlement agreement with the city by litigating the comp time claim. This decision addresses these two issues.

## I. COMP TIME

### A. UNDISPUTED FACTS

The city, with the agreement of the MPA, has exercised the option of using comp time instead of cash to pay police officers for overtime. Thus the officer who works eight hours of overtime gets twelve hours off at full pay. The city's procedure for handling requests to use accumulated comp time is set forth in its collective bargaining agreements covering the period from 1991–1997 [the "agreements"]. It appears that the same system is in effect now.

According to the agreements, an officer who wants to use comp time must give "reasonable advance notice" to his commanding officer of his request, specifying the particular dates he wants to take off. The agreements give the commanding officer discretion to grant or deny the request, and such officer may grant the request only if the dates requested are "available ... in accordance with the needs of the Police Service". The commanding officer's decision is final. Competing requests for using comp time are resolved on a "first-come, first-serve basis".

Police officers typically request the use of comp time in the same manner as a request to use "additional time off". Depending on seniority, officers are entitled to between 126 and 141 "off-days" per year, including "regular off-days", "holiday off-days", pre-selected vacation days, and additional time-off.

Each division and bureau of the department has established its own staffing level goals and requirements, based upon their particular needs. For example, the Patrol Bureau, comprising about 60% of all nonsupervisory officers, has a staffing level goal that 55% of its officers should be on-duty and working at any given time on any given day. The Patrol Bureau also has a "maximum percentage goal" that no more than 8–11% of its officers should be off on vacation or through the use of comp time at any given time on any given day. Staffing level goals are subject to upward adjustment based on special events, emergencies, or other unforeseen circumstances. Staffing requirements and needs are based on work schedules, anticipated work loads, and similar factors.

Requests for additional time off are denied if granting the request would cause the particular division or bureau to fall below its staffing goals. Otherwise such requests are granted, provided there are no special circumstances requiring more officers to remain on duty. When such requests are granted, the officer chooses how he wishes to account for the time, for example, by using vacation time or accumulated comp time. When the supervisor or commanding officer concludes that a requested date is unavailable, he is almost always able to offer the requesting officer an alternative date within one week of the date requested.

The city will not grant a request to use comp time if doing so would require it to call in another officer to work overtime. The city also declines to call in an officer from another shift or location in order to grant a request to use comp time.

## B. ANALYSIS

Title 29 U.S.C. § 207(*o*)(5) provides:

An employee . . .

(A) who has accrued compensatory time off . . ., and

(B) who has requested the use of such compensatory time,

shall be permitted by the employee's employer to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency.

The plaintiffs contend that rather than following the "unduly disrupt" standard set forth above, the city automatically denies comp time requests whenever granting them would require another officer to work overtime or would necessitate calling in a replacement officer from another shift or precinct.

The city argues that its policy does not violate § 207(*o*)(5) because it always grants requests to use comp time "within a reasonable period". Even if the defendant denies a request for particular day(s) off, it almost always offers an alternative time within one week of the requested date(s). Therefore, according to the city, it grants comp time requests within a reasonable period, and thus there is no need to consider the issue of undue disruption.

Which party is correct depends on what "reasonable period" means. If the phrase refers to the time period between the date the employee requests off and the date the city will actually allow him to take off, as the city suggests, then the city prevails. The plaintiffs and the Secretary, on the other hand, argue that "reasonable period" means that the employee must give adequate notice that he wants to use comp time on a particular day, thereby giving the employer time to plan and to determine whether the request can be granted. If this interpretation is correct, then once the employee gives the employer a reasonable period within which to grant the request, the employer must do so unless undue disruption would result.

The language of the statute is somewhat ambiguous. This is perhaps best illustrated by considering, with the benefit of hindsight, how the statute could have been better written to reflect either one of the competing interpretations advanced by the parties. While both readings are plausible, I believe that the more reasonable interpretation is the one advanced by the plaintiffs and the Secretary.

■ The Secretary's view is consistent with the Department of Labor's implementing regulations, which are entitled to considerable deference. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (a court must give effect to an agency's regulation containing a reasonable interpretation of an ambiguous statute); *accord Christensen v. Harris County*, 529 U.S. 576, 120 S.Ct. 1655, 1662, 146 L.Ed.2d 621 (2000). In addition, the Secretary has spoken more directly on the specific issue presented here in the preamble to those regulations, a 1994 opinion letter of the Department's Wage and Hour Administrator, and in her amicus brief in the present case. The interpretations contained in these latter sources are entitled to less deference than the interpretation contained in formal regulations. *Christensen*, 120 S.Ct. at 1662–63. Ordinarily, these less formal interpretations are entitled to "respect", but only if they "have the power to persuade". *Id.* at 1663 (internal quotation marks omitted). However, an agency's interpretation of its own regulation, when such regulation is ambiguous, is entitled to more deference. *Id.; Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (agency interpretation of its own ambiguous

regulation is controlling unless plainly erroneous or inconsistent with the regulation).

I turn to the regulations first. The Secretary's regulation implementing § 207(o)(5) is contained in 29 C.F.R. § 553.25. Two subsections are relevant here. Subsection (c) states:

> *Reasonable Period.* (1) Whether a request to use compensatory time has been granted within a "reasonable period" will be determined by considering the customary work practices within the agency based on the facts and circumstances in each case. Such practices include, but are not limited to (a) the normal schedule of work, (b) anticipated peak workloads based on past experience, (c) emergency requirements for staff and services, and (d) the availability of qualified substitute staff.
>
> (2) The use of compensatory time in lieu of cash payment for overtime must be pursuant to some form of agreement or understanding between the employer and the employee (or the representative of the employee) reached prior to the performance of the work. To the extent that the conditions under which an employee can take compensatory time off are contained in an agreement or understanding as defined in § 553.23, the terms of such agreement or understanding will govern the meaning of "reasonable period."

Subsection (d) provides:

> *Unduly Disrupt.* When an employer receives a request for compensatory time off, it shall be honored unless to do so would be "unduly disruptive" to the agency's operations. Mere inconvenience to the employer is an insufficient basis for denial of a request for compensatory time off. (See H. Rep. 99–331, p. 23.) For an agency to turn down a request from an employee for compensatory time off requires that it should reasonably and in good faith anticipate that it would impose an unreasonable burden on the agency's ability to provide

services of acceptable quality and quantity for the public during the time requested without the use of the employee's services.

Subsection (c) does not really define the statutory term "reasonable period"; it only lists some factors to consider, and it gives the parties some freedom to define the term in their collective bargaining agreement. *See* 29 C.F.R. 553.23 (referenced in subsection (c) above, which states in pertinent part that "[t]he agreement or understanding may include other provisions governing the preservation, use, or cashing out of compensatory time so long as these provisions are consistent with [29 U.S.C. § 207(o) ]"). Subsection (c) does not decide the question of how "reasonable period" should be interpreted in the present case.

■ Subsection (d), however, supports the Secretary's interpretation and is inconsistent with the city's. The regulation suggests that a request for a specific time period off must be granted in the absence of undue disruption: For an employer to turn down a comp time request, it must in good faith believe that granting it would impose an unreasonable burden "during the time requested". The city does not follow this approach. It denies a request automatically, without considering· the issue of undue disruption, if it would require another officer to work overtime or a replacement from another shift or precinct. The city's contention that it does not·deny such requests but rather grants them by offering an alternate date is also inconsistent with the regulation's use of the phrase "during the time requested".

I believe the Secretary's interpretation of the FLSA's comp time provision is more consistent with its regulation. Since that regulation is itself an interpretation of the FLSA's ambiguous comp time provision, the regulation is entitled to deference under *Chevron.*

The regulations discussed above could still be clearer, however, and the Secre-

tary's preamble to the regulations, opinion letter and amicus brief eliminate any remaining ambiguity. The preamble states:

> The Department recognizes that situations may arise in which overtime may be required of one employee to permit another employee to use compensatory time off. However, such a situation, in and of itself, would not be sufficient for an employer to claim that it is unduly disruptive.

52 Fed.Reg.2012, 2017 (1987). An August 19, 1994 opinion letter of the Department's Wage and Hour Administrator provides that

> It is our position, notwithstanding [a collective bargaining agreement to the contrary], that an agency may not turn down a request from an employee for compensatory time off unless it would impose an unreasonable burden on the agency's ability to provide services of acceptable quality and quantity for the public during the time requested without the use of the employee's services. The fact that overtime may be required of one employee to permit another employee to use compensatory time off would not be a sufficient reason for an employer to claim that the compensatory time off request is unduly disruptive.

These statements are entitled to deference under *Auer* because they interpret and apply the inherently ambiguous undue disruption standard contained in the Secretary's own regulation. The Secretary's approach is well-reasoned and consistent with the applicable statute and regulations; the court will therefore accept it.

Both parties and the Secretary devote substantial attention to the legislative history of § 207(*o*)(5). However, I do not rely on that history because I believe that it is essentially neutral in this case. The comp time provision represents a compromise position between granting public employers total exemption from the FLSA and granting public employees full FLSA protection. As can be expected, the legislative history reflects the fact that Congress struck a balance between these competing interests. The parties each point to portions of the legislative history showing that each of these interests was taken into account. This exercise sheds no light on the question of precisely where the legislature intended to strike the balance in the case at bar.

The principal source of support for the city's argument is *Aiken v. City of Memphis,* 190 F.3d 753 (6th Cir.1999). In that case a divided panel ruled that the FLSA did not require the City of Memphis to work one police officer overtime in order to grant another officer's request to use comp time. Although the panel majority ruled against the plaintiffs on a claim quite similar to the one presented here, I find that *Aiken* does not support the defendant's argument in the present case, for three reasons.

First, the key to the court's decision was its finding that the parties, through their collective bargaining agreement, had

> agreed ... that the reasonable period for requesting the use of banked compensatory time begins thirty days prior to the date in question and ends when the number of officers requesting the use of compensatory time on the given date would bring the precinct's staffing levels to the minimum necessary for efficient operation.

*Id.* at 757. This definition of "reasonable period" is entirely different from the interpretation advanced by the city in the present case. In fact, there is no decision which supports the city's definition. More important, the city's understanding of the meaning of "reasonable period" is not contained in any of the collective bargaining agreements. Thus the finding that was crucial in *Aiken*—that the defendant and the plaintiffs had agreed to a definition of the term "reasonable period" that absolved the defendant of liability—could not be made in this case.

Second, I believe that the panel majority's analysis was incorrect, for the reasons

expressed in Judge Ryan's dissent. The main problem with the definition accepted by the court is that it rather transparently disguises a substantive rule about when it will deny comp time requests—whenever it is necessary to avoid having another officer work overtime—as a rule about timing. This creative definition of "reasonable period", like the City of Milwaukee's, writes the "unduly disrupt" standard out of the statute. Though the Secretary's regulations give the parties freedom to define the term "reasonable period" (29 C.F.R. § 553.25(c)(2)), their definition cannot contradict § 207(*o*)(5). *See* 29 C.F.R. § 553.23. The regulations do not grant the parties any contractual freedom to define the statutory "undue disruption" standard.

Third, the divided panel opinion in *Aiken* illustrates the ambiguity of the statute and regulations. In fact, the majority conceded that the issue was a close one, and it admitted to difficulty reconciling 29 C.F.R. § 553.25(c)(2) (allowing parties to define "reasonable period") and 29 C.F.R. § 553.25(d) ("undue disruption"). 190 F.3d at 757 n. 2. This is precisely the type of situation that calls for deference to an agency's interpretation of its own ambiguous regulations under *Auer*. Unlike this court, the panel majority in *Aiken* did not have the benefit of the Secretary's thorough and reasoned analysis of her own ambiguous regulations.

The city also relies upon *Christensen v. Harris County,* 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). Other than specifying the relative amounts of deference that are owed to various types of agency interpretations (discussed above), that case has no relevance here. In *Christensen* the Court held that a public employer could compel employees to use their accumulated comp time. *Id.* at 1658. The primary reason for the Court's decision was its conclusion that there was nothing in the FLSA or its implementing regulations to prohibit compelled use of comp time. The Court was clear that this would not be true in a case involving an employ-er's efforts to *prohibit* the use of comp time, which is precisely the issue presented here.

> At bottom, we think the better reading of § 207(*o*)(5) is that it imposes a restriction upon an employer's efforts to *prohibit* the use of compensatory time when the employees request to do so; that provision says nothing about restricting an employer's efforts to *require* employees to use compensatory time.

*Id.* at 1661 (emphasis in original).

As a fall-back argument, the City argues that working another officer overtime or calling in officers from other shifts or precincts would always cause undue disruption. I cannot determine, based on the present record, whether this is true. I note, however, that the Secretary has opined in the sources quoted above that the mere fact that a comp time request might require another officer to work overtime does not, by itself, cause undue disruption. It is possible that adopting the measures proposed by the plaintiffs would in some cases or perhaps many cases impose an unreasonable burden, depending on the circumstances. The determination of that issue will have to await further proceedings.

I hold that the city's administration of its comp time system does not comply with § 207(*o*)(5). The court will grant the plaintiffs' motion for partial summary judgment, and it will deny the defendant's motion for partial summary judgment. The parties will be directed to submit their proposals regarding what further proceedings are necessary to determine the appropriate remedy.

## II. DID THE MPA VIOLATE THE 1990 SETTLEMENT AGREEMENT?

Sixty percent of the plaintiffs, including the MPA, sued the city in 1988, alleging claims substantially similar to the one discussed above. That action was settled in

1990. The court-approved settlement contained the following covenant not to sue:

> The Plaintiffs agree that they shall not counsel any individual or entity (including, *inter alia*, all non-concurring Plaintiffs as defined in the Plan and police officers that may in the future become employed by the MPD) to commence any action pursuant to the FLSA against the City of Milwaukee and/or its constituent agencies, departments, officers, agents, or employees with respect to any of the matters set forth in the original, First Amended, or Second Amended Complaint in Civil Action No. 88–C–0412. The Plaintiffs further agree that they shall not provide or finance legal counsel to any individual(s) or entity(ies) in conjunction with any such action.

The court of appeals has instructed this court to consider whether the MPA broke its promise "not to sue or to foment litigation about the matters covered by the 1988 complaint." *DeBraska v. City of Milwaukee*, 189 F.3d 650, 654 (7th Cir.1999).

In order for the court to address this question, the defendant has moved to join the MPA as a third-party defendant, since the MPA had been dismissed from this suit upon the city's motion. The plaintiffs object to the motion, but I believe that the motion must be granted in order to enable this court adequately to consider the question that the court of appeals has remanded.

Turning to that question, whether the MPA broke its promise depends, as the court of appeals observed, upon whether the covenant only covers the plaintiffs' claims based on pre–1991 pay periods, as the plaintiffs contend. *See id.* For its part, the city argues that the covenant also covers future claims arising from the city's conduct during future pay periods. The court of appeals apparently believed that the covenant could at least arguably be read either way. *See id.*

I cannot determine the meaning of the covenant as a matter of law, because it is ambiguous, and its meaning therefore could be affected by issues of fact, such as extrinsic evidence regarding the intent of the parties. On the one hand, an agreement not to sue a defendant over future conduct is unusual, and in some contexts disfavored if not clearly and explicitly stated. *See, e.g., Buxton v. Consol. Rail Corp.*, 1999 WL 46610, *3 (E.D.Pa. Jan. 6, 1999); *Leon v. Family Fitness Center, Inc.*, 61 Cal.App.4th 1227, 71 Cal.Rptr.2d 923, 926 (1998). The covenant in this case is far less explicit than it could have been. On the other hand, the covenant includes a promise by the union not to urge future MPD police officers to sue, and future police officers are a group that by definition could not have any pre–1991 claims. This fact tends to support the city's reading.

I will not address the plaintiffs' argument that if the covenant is as broad as the city contends, it is void as contrary to the FLSA and public policy. This argument was raised for the first time in the plaintiffs' reply brief on remand.

The defendant will be ordered to file its third-party complaint against the MPA no later than 30 days from the date of this decision and order.

## ORDER

IT IS ORDERED that the defendant's motion for partial summary judgment be and hereby is denied.

IT IS ALSO ORDERED that the plaintiffs' motion for partial summary judgment be and hereby is granted. The court hereby declares that the defendant's practices with respect to compensatory time off requests do not comply with 29 U.S.C. § 207(*o*)(5).

IT IS FURTHER ORDERED that the parties serve and file their proposals as to what further proceedings are necessary no later than October 26, 2000.

IT IS FURTHER ORDERED that the defendant's motion to join the MPA as a

third-party defendant be and hereby is granted. The defendant is directed to serve and file its third-party complaint no later than October 26, 2000.