**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 29, 2003**

**Charles R. Fulbruge III**
Clerk

REVISED JUNE 16, 2003

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-21117

_____

HOUSTON POLICE OFFICERS' UNION; HANS MARTICIUC; ANDREA BURKE;
STEVEN CAIN; RICHARD HAHN; MICHAEL LUMPKIN; SHAWN PALIN;
CLYDE ROOKE; STEVEN MURDOCK; EIGHT HUNDRED EIGHTY-NINE
ADDITIONAL COUNSELORS,

Plaintiffs-Appellants,

versus

CITY OF HOUSTON, TEXAS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before JONES, SMITH, and SILER,[*] Circuit Judges.

EDITH H. JONES, Circuit Judge:

The principal question raised in this appeal is whether
section 207(o)(5) of the Fair Labor Standards Act ("FLSA") requires
a public agency to allow its employees the use of accrued

_____

[*]United States Court of Appeals for the Sixth Circuit, sitting
by designation.

compensatory time on those days specifically requested by the employees, unless to do so would "unduly disrupt" the agency's function. In support of this proposition, appellant Houston Police Officers' Union and others (collectively, the "Union") argue that this court must defer to various statements and regulations of the Department of Labor construing section 207(o)(5). Because the statutory language is clear, however, deference is inappropriate. The summary judgment of the district court in favor of the City of Houston ("City") is accordingly affirmed.

## BACKGROUND

The FLSA requires all employers, including states and their political subdivisions, to provide overtime compensation for employees who work more than 40 hours per week. 29 U.S.C. § 207 (2003). In the private sector, compensation for excess hours is to be paid at a rate of not less than one-and-a-half times the employee's hourly wage. Id. at § 207(a)(1). To ease the burden on public employers, Congress allows these entities to provide overtime compensation in the form of compensatory time ("comp time") at a rate of one-and-a-half hours for every excess hour worked. Id. at § 207(o)(1). An employer that would utilize this provision must have a collective bargaining agreement with its employees or agreements with individual employees explicitly permitting such a practice. Id. at § 207(o)(2).

2

During the period covered by this litigation,[1] the Houston Police Department ("HPD") administered comp-time usage by way of a log known as the "Red Book," one of which was kept in each of the HPD's units. A unit's Red Book listed all of the officers in the unit who were scheduled, for whatever reason, to be off-duty on any given day. Each unit had a predetermined limit on the number of officers who could be off on a particular day. This limit was based on the shift commander's estimate of the unit's manpower needs. The primary considerations in formulating this estimate were the unit's anticipated workload (based on historical trends), the unit's efficiency, and the unit's ability to tolerate disruption in its operations. In general, the Shift Commanders (with approval from Division Commanders) limited the spaces in the Red Book to ten percent of the unit's staff. An officer wishing to use his accrued comp time had to sign his name in his unit's Red Book for the day(s) he wished to take off. If the Red Book's limit for the requested day had not been reached, the officer received his requested comp time.

The Union was displeased with this system, as it could frustrate an officer's attempt to choose the dates on which he

---

[1] The parties have stipulated that they have been in agreement since July 2001 regarding the manner in which accrued comp time is to be used. Because the Union's suit is for past damages, the parties' current agreement does not moot the statutory interpretation question this case presents.

would use comp time. Instead of allowing an individualized assessment of the inconvenience that an officer's absence on a particular day might place on his unit, the Red Book system imposed an inflexible ten-percent limit on all days. Forced by the department to work overtime at the HPD's convenience, members of the Union would have preferred to use comp time for their convenience.

The Union accordingly sued the City in federal court, alleging, <u>inter alia</u>, that the HPD's Red Book system violated the FLSA by failing to provide individualized assessments of the disruption that comp-time requests over and above the ten-percent limit might cause to the operations of the HPD.

Upon receiving cross-motions for summary judgment, the district court entered summary judgment for the City, holding that the FLSA does not grant the employees of public agencies the right to use their accrued comp time on days of their own choosing. The Union appealed.

**STANDARD OF REVIEW**

This court reviews the grant of summary judgment <u>de novo</u>, applying the same standards as the district court. <u>Sherrod v. American Airlines, Inc.</u>, 132 F.3d 1112, 1119 (5th Cir. 1998); <u>McInnis v. Alamo Cmty. Coll. Dist.</u>, 207 F.3d 276, 279 (5th Cir. 1998). Summary judgment under Rule 56 of the Federal Rules of

4

Civil Procedure is appropriate only "if . . . the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).

A fact is material if it could affect the outcome of the lawsuit, and a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Reviewing courts must look at the evidence and draw all inferences therefrom in a light most favorable to the non-moving party.  Hibernia Nat'l Bank v. Carner, 997 F.2d 94, 97 (5th Cir. 1993).

## DISCUSSION

Two issues are raised on appeal: what is the proper interpretation of section 207(o)(5), and whether the HPD correctly applied the provision to its operations.  We discuss each issue in turn.

## I.   Section 207(o)(5)

The FLSA provides, in pertinent part, that:

[a]n employee of a public agency which is a State, political subdivision of a State, or an interstate governmental agency—
(A)  who has accrued compensatory time off . . . and

5

> (B)  who has requested the use of such compensatory
> time,
>
> shall be permitted by the employee's employer to use such
> time within a reasonable period after making the request
> if the use of the compensatory time does not unduly
> disrupt the operations of the public agency.

29 U.S.C. § 207(o)(5).  The litigants offer two conflicting interpretations of this provision.  The City contends that the phrase "within a reasonable period after making the request" obliges an employing public agency to authorize an employee's use of accrued comp time within a certain temporal range (a "reasonable period") following the date on which the request is made.  Comp time may be delayed, nonetheless, in the event that the employee's desired usage would "unduly disrupt" the agency's operation.

Without gainsaying the plausibility of the City's interpretation, the Union advances another reading of this requirement:  The employing agency must allow the employee's use of comp time on the day specifically requested, unless it would "unduly disrupt" the agency's operation.  The Union fortifies its interpretation by arguing that it is advocated by the Department of Labor in at least three separate and legally relevant venues: (1) the statute's implementing regulations, Application of the Fair Labor Standards Act to Employees of State and Local Governments, 29 C.F.R. § 553 et seq. (esp. § 553.25), which the Department of Labor enacted in 1987, pursuant to formal notice-and-comment rulemaking

6

("Regulations");[2] (2) an opinion letter produced by the DOL's Wage and Hour Division in 1994, 1994 WL 1004861 ("Opinion Letter");[3] and (3) the amicus brief filed by the Secretary of Labor in an action resembling the instant case, DeBraska v. City of Milwaukee, 131 F. Supp.2d 1032 (E.D. Wisc. 2000) ("Amicus Brief").[4]

When construing a federal statute that has been interpreted by an administrative agency, courts look first to the language of the statute. If Congress has "directly spoken to the

---

[2]See 29 C.F.R. § 553.25(d): "When an employer receives a request for compensatory time off, it shall be honored unless to do so would be 'unduly disruptive' to the agency's operations. Mere inconvenience to the employer is an insufficient basis for denial of a request for compensatory time off. (See H. Rep. 99-331, p. 23.) For an agency to turn down a request from an employee for compensatory time off requires that it should reasonably and in good faith anticipate that it would impose an unreasonable burden on the agency's ability to provide services of acceptable quality and quantity for the public during the time requested without the use of the employee's services."

[3]The Opinion Letter states, "It is our position, notwithstanding [an agreement between the Police Officers Association and the City] that an agency may not turn down a request from an employee for compensatory time off unless it would impose an unreasonable burden on the agency's ability to provide services of acceptable quality and quantity for the public during the time requested without the use of the employee's services. The fact that overtime may be required of one employee to permit another employee to use compensatory time off would not be a sufficient reason for an employer to claim that the compensatory time off request is unduly disruptive" (emphasis added).

[4]Amicus Brief at 7 ("In providing that an employee shall be permitted to use comp. time 'within a reasonable period after making the request,' Congress obviously intended to prescribe a minimum notice requirement, not a maximum time after the date of the leave request that comp. time may be used.").

7

precise question at issue," i.e. "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778 (1984). If the statute is ambiguous, however,

> the court does not simply impose its own construction on the statute, as would be necessary in the absence of administrative interpretation. Rather, . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Id. at 843. The Chevron doctrine thus requires a litigant, such as the Union, who would have a court defer to an agency's regulations, to jump two hurdles. He must show that the statute is in fact ambiguous regarding the question at bar, and he must demonstrate that the regulation's statutory interpretation, whether or not preferable, is permissible. Before considering the various statements from the Department of Labor, then, the statute must be carefully reviewed.

The text of section 207(o)(5) plainly defines the period between the date the employee submits his request and the date the employer allows the employee to use the comp time: the employee "shall be permitted . . . to use such [comp] time within a reasonable period after making the request." 29 U.S.C. § 207(o)(5). As the City suggests, mandating a "reasonable period" for use of comp time is different from mandating the employee's

8

chosen dates. The language offers a span of time to the employer, the beginning of which is the date of the employee's request.

The Union responds in two ways to this grammatically appealing interpretation. First, the Union asserts that "such time" means "the specific time requested by the employee." This is untenable, however, because within section 207(o)(5) "time" consistently refers to the number of compensatory hours to which an employee is entitled, not, as the Union would have it, to the date or dates on which an employee asks to be let off work. Words are ordinarily interpreted to have a uniform meaning in a given statutory context.

The Union also argues that "[t]he interplay between the 'reasonable period' and 'unduly disrupt' clauses generates ambiguity within the language of the statute." While the Union concedes that it is possible that the "reasonable period" clause refers only to the time between request and comp-time consumption, the presence of the "unduly disrupt" clause raises the possibility that the "reasonable period" clause refers, rather, to the time between intended and actual date of comp-time consumption. We understand the interaction between these two clauses quite differently. Instead of obscuring the proper object of the "reasonable period" clause, the "unduly disrupt" clause serves to clarify its obvious meaning. The "reasonable period" clause imposes upon the employer the obligation to facilitate the

9

employee's timely usage of his accrued compensatory time. The "unduly disrupt" clause suggests conditions, however, that would release the public employer from the previously imposed condition. The statute, thus construed, reflects a balance between obligation and exemption.[5]

Finally, according to the Union, the City's interpretation expands the impact of the "reasonable period" clause while leaving the "unduly disrupt" clause without meaning. Thus, the Union contends, when an employee makes a reasonably timely request for a specific period of comp-time leave, the employer must grant it unless doing so would unduly disrupt the agency's operation for each such request. We have just explained how a straightforward reading of the provision balances obligation and exemption. But even more to the point, the Union's explanation requires linguistic contortion where it is obvious that Congress could have chosen much simpler language to express the Union's desired policy. Had Congress intended to do as the Union suggests, alternative statutory language is not hard to envision. Congress

---

[5]Though there is no need to rest our argument on the cushions of armchair legislative history — the logic found in the statute's plain text is sufficient for the question at hand — the events compelling Congress to enact this statute strongly suggest the prudence of construing these two phrases as a compromise between the interests of public agencies and their employees. For an exposition of such, see Justice Thomas's discussion in Christensen v. Harris County, 529 U.S. 576, 578–580, 120 S.Ct. 1655 (2000). See also Moreau v. Klevenhagen, 508 U.S. 22, 25–28, 113 S.Ct. 1905 (1993).

might have worded subparagraph (B) to refer to an employee "who has requested with reasonable advance notice the use of such compensatory time," while eliminating the "reasonable period" language from the latter part of the sentence. Congress might alternatively have substituted "as requested" for "within a reasonable period" after making the request. That Congress did not forthrightly choose such obvious means to describe employee rights undermines the Union's interpretation.

For all these reasons, we conclude that the statute does not require a public employer to authorize comp-time use as specifically requested by an employee (subject to the undue disruption clause), but instead requires that the comp time be permitted within a reasonable period after the employee requests its use. Although this conclusion ends the analysis for Chevron purposes, it is useful to address the errors in the Union's reliance on DOL interpretations referenced above.

First, the regulation implementing section 207(o)(5), supra n.2, simply does not address whether the statute mandates an employee's specifically requested dates for comp time. The regulation highlights that actual disruption, rather than "mere inconvenience," be caused to the agency as a justification for denying comp-time use, but it neither addresses case-specific determinations nor prohibits an agency from determining, as HPD has done, that an absentee rate exceeding ten percent of a unit's staff

11

actually jeopardizes the department's ability to protect the citizens of Houston.[6]  While the regulation would be entitled to Chevron deference if it spoke to the issue at hand, and if the statute were ambiguous, that case is not before us.  See Christensen, 529 U.S. at 587–88, 120 S.Ct. at 1663.

The Union's additional administrative crutches include the DOL's 1994 Opinion Letter, supra n.3, and its Amicus Brief filed in federal district court litigation, supra n.4.  Contrary to the Union's view, we are not obliged to defer to these interpretations of section 207(o)(5) under Auer v. Robbins, 519 U.S. 452, 117 S.Ct. 905 (1997), as that case concerns judicial deference to administrative interpretations of the agency's own ambiguous regulations.  Auer, 519 at 461, 117 S.Ct. 911; see also Christensen, 529 U.S. at 588, 120 S.Ct. at 1662 (referring to "Auer deference"); Moore v. Hannon Food Service, Inc., 317 F.3d 489 (5th Cir. 2003).[7]  Nor is it clear, after United States v. Mead Corp., 533 U.S. 218, 121 S.Ct. 2164 (2001), whether these pronouncements

_____

[6]We emphasize, moreover, that the Red Book limits were in practice ameliorated by an appeals process.  See infra n.9.

[7]The City's reliance on Christensen wholly to forestall our deferring to these authorities is equally misplaced.  See Barnhart v. Walton, 535 U.S. 212, 220–22, 122 S.Ct. 1265, 1271-72(emphasizing that agency interpretations reached through less formal means than notice and comment rulemaking are not "automatically deprive[d]" of Chevron deference, and "[i]f this Court's opinion in Christensen, suggested an absolute rule to the contrary, our later opinion in [Mead] denied the suggestion" (citations omitted)).

are sufficiently authoritative to merit <u>Chevron</u> deference. That knotty issue may be pretermitted, however, because neither the Opinion Letter nor the Amicus Brief persuades us that our construction of section 207(o)(5) is wrong or that the provision is ambiguous, as would be required for <u>Chevron</u> deference.

The Union also relies on court opinions that have perceived ambiguity in section 207(o)(5), most notably a district court in <u>DeBraska v. City of Milwaukee</u>, 131 F. Supp.2d 1032 (E.D. Wisc. 2000), but also Judge Ryan's dissent from a Sixth Circuit opinion in <u>Aiken v. City of Memphis</u>, 190 F.3d 753 (6th Cir. 1999). These cases fail to advance the Union's argument, not only because they are not legally binding, but also because they do not address the threshold issue of statutory ambiguity.[8]

## II. Application of Section 207(o)(5)

---

[8]In <u>DeBraska</u>, the most the court provides in defense of its conclusory assertion that "[t]he language of the statute is somewhat ambiguous" is its <u>ex post facto</u> judgment that "the statute could have been better written to reflect either one of the competing interpretations." 131 F. Supp.2d at 1034. Nor does Judge Ryan's dissent, despite a thoughtful discussion of the application of the DOL Regulations to the case before that court, give the slightest consideration to the question of the statute's ambiguity. Finally, the Union cites three other cases in which federal district courts found the statute to be ambiguous. <u>Meyer v. Raleigh</u>, 5:99 CV 324 BO(3) (E.D.N.C. Aug. 10, 2001); <u>Long Beach Police Ass'n v. Luman</u>, CV 99-13090 FMC (JMJX) (C.D. Cal. May 10, 2001); <u>Canney v. Brookline</u>, 2000 U.S. Dist. 16279 (D. Mass. October 19, 2000). The Union did not provide copies of these difficult-to-access decisions, and they are district court cases, from other circuits, that do not bind us.

13

The Union also attempted to adduce sufficient summary judgment evidence to suggest that, under the HPD's "Red Book" system, complainant police officers were unable to use their accrued comp time within a "reasonable period after making the request." After a careful review of the record, this court concludes, as did the district court, that the Union has failed to create a genuine issue of material fact on the HPD's alleged misapplication of section 207(o)(5).

The principal evidence to which the Union points consists of the following: (1) the deposition of Joe L. Breshears (HPD Executive Assistant Chief); (2) HPD General Order 300-07, September 18, 1995; (3) the data and testimony of Dr. P.R. Jeanneret (HPD expert witness); and (4) the memorandum of G.S. Stewart (Assistant Chief, South Patrol Unit, HPD). These documents do not, either individually or collectively, present any evidence whatsoever that the HPD's Red Book system prevented the city's police officers from using accrued comp time within a "reasonable period after making the request." The most that can be found here is some slight evidence of the fact that certain forms of police work, particularly patrol duty, are ill-suited to the removal and substitution of non-fungible officers.

To review the evidence briefly: In the deposition testimony of Chief Breshears can be found a detailed description of the manner in which the Red Book policy was formulated and

14

administered; in General Order 300-07 there is a formal policy statement of the same; and in Chief Stewart's memorandum are the results of a poll saying, once again, that comp time could be taken on a first-come, first-served basis. The sharpest version of all, of course, is the information provided by Dr. Jeanneret, as his data and testimony were prepared by the HPD in response to this suit. In none of these reports is there the slightest hint that the Red Book system, either in theory or practice, violated the FLSA as interpreted above.[9]

Nonetheless, one of the Union's points calls for a more substantial response. This is that officers on patrol duty had experienced rather more substantial delays in their ability to consume their accrued comp time.

The report prepared by Dr. P.R. Jeanneret concluded with the following statement: "For the most part, an employee who is eligible for compensatory time off is able to obtain approval for a specific time period requested without difficulty." Dr. Jeanneret goes on, however, to note an exception to this general rule:

---

[9]Even more surprising, the summary judgment evidence in this case also fails to sustain the Union's own interpretation of the FLSA. In Chief Breshears' testimony and Dr. Jeanneret's report there is a strong suggestion that the HPD did a more-than-adequate job of responding, via an informal appeals system, to officers' individual requests to override the Red Book's theoretically mandatory ten percent absentee quota.

15

> The exception to this conclusion occurs in Patrol and especially those divisions that have a high volume of calls for service. The divisions with high volumes of service calls where operations have been using below minimum staffing levels presented circumstances when not everyone might be able to obtain the specific compensatory time off they had requested. These relatively limited circumstances arise when the red book slots are filled and when making exceptions would present the division with safety concerns and unacceptable increases in response time to calls for service.

While the Union does not appear to dispute Dr. Jeanneret's basic conclusion, it argues that his qualification of the general rule is significantly understated. What he fails to mention, the Union argues, is that, of the over 5000 police officers in the HPD, approximately 40% work in patrol. The exception thus swallows the rule.

The Union's clarification does not suffice to create a fact issue concerning HPD's violation of section 207(o)(5). First, the proposition to which this factum constitutes an exception is not an exception to the assertion that Houston police officers were unable to take compensatory time "within a reasonable period after making the request." It is apposite, rather, to the proposition that officers are "able to obtain approval for a specific time period requested without difficulty." As has been discussed, the FLSA does not grant such a right. The HPD's denial of such an option to patrol officers cannot, therefore, be actionable.

We also note, moreover, that this exception would be void of legal significance even if the Union's reading of the FLSA were

16

correct. This is so because requiring comp-time usage-on-demand would, as Dr. Jeanneret's uncontroverted analysis concludes, "unduly disrupt" the operations of the HPD. As he said:

> Such understaffing would severely impact the operational efficiency and effectiveness of HPD and undermine the Department's continued efforts to provide the required levels of service within the budget allocations provided in the City of Houston.

In other words, local neighborhoods could be seriously adversely affected when too many regular duty officers are off work. The FLSA requires, generally, that officers be allowed to take comp time within reasonable periods after making their requests. The burden that this statute places upon public employers is waived, however, in those circumstances where compliance would "unduly disrupt the operations of the public agency." This balance represents the statutory compromise between the interests of public agencies and their employees. Without adequate evidence placing Dr. Jeanneret's conclusion of undue disruption into dispute, this court must conclude, as did the district court, that the Union has no claim cognizable under section 207(o)(5).

## CONCLUSION

The clearly articulated details of section 207 of the FLSA strike a balance between the employee's right to use comp time promptly and the public agency's need to avoid disruption, a balance expressed with sufficient clarity to resolve the

17

interpretive dispute before us.  Moreover, the Union's summary judgment evidence is insufficient to create a fact issue over HPD's alleged misapplication of section 207(o)(5).  This court accordingly affirms the district court's grant of summary judgment to the City.

Judgment **AFFIRMED**.

18