United States Court of Appeals
Fifth Circuit

**F I L E D**

April 29, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

—————————

No. 04-50649

—————————

SOILA COMACHO; SONIA DENISE GROVER; TEXAS
WELFARE REFORM ORGANIZATION; EL PASO COUNTY
HOSPITAL DISTRICT, doing business as R.E. Thomason General
Hospital,

Plaintiffs-Appellees,

versus

TEXAS WORKFORCE COMMISSION; TEXAS HEALTH AND
HUMAN SERVICES COMMISSION; TEXAS DEPARTMENT OF
HUMAN SERVICES,

Defendants-Appellants.

—————————————————————————

Appeal from the United States District Court
For the Western District of Texas

—————————————————————————

Before KING, Chief Judge, GARZA, and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The Texas Workforce Commission ("TWC") redefined the Texas work requirements under

the federal-state Temporary Assistance for Needy Families ("TANF") program. The new definition

allows the TWC to terminate medical cash assistance to TANF recipients who fail to ensure their

1

children's immunizations, wellness check-ups, school attendance, or who fail to avoid substance abuse. The sole issue in this case is whether these new rules are inconsistent with and thus preempted by the federal Medicaid Act. 42 U.S.C. § 1396 - 1396v. Plaintiffs Soila Camacho[1] ("Camacho"), Sonia Denise Grover ("Grover"), the Texas Welfare Reform Organization ("TWRO"), and the El Paso County Hospital District, doing business as R.E. Thomason General Hospital ("Thomason GH," collectively, the "Plaintiffs") sued TWC, the Texas Health and Human Services Commission ("THHSC") and the Texas Department of Human Services ("TDHS," collectively, the "Defendants"), seeking relief against enforcement of the new rules. After granting a preliminary injunction, the district court granted declaratory judgment, preventing TDHS from terminating cash assistance under the redefinition. The Defendants appeal. We address the declaratory judgment only, as we dismissed the preliminary injunction appeal as moot.

I

The material facts are undisputed. Camacho was a recipient of TANF and Medicaid, and reapplied for benefits after being terminated from her job. Grover is currently a recipient of TANF and Medicaid subject to the challenged rules. TWRO is an organization that advocates on behalf of its members, including recipients of TANF and Medicaid who are at risk of losing their Medicaid benefits under the new rules. Thomason GH is a county hospital required by state law to provide indigent care which, it contends, would lose funding under the new rules. TWC enacted the rules redefining Texas's work requirements. TDHS is the state agency authorized to terminate Medicaid assistance under the new rules. THHSC implements the Texas Medicaid program.

---

[1] The style spells plaintiff's name "Comacho." The record, however, indicates that the correct spelling is "Camacho."

The Plaintiffs filed suit in state district court in Travis County, Texas, seeking a temporary injunction against the enforcement of the new rules. The Defendants removed the case to federal court. The district court granted Plaintiffs' application for a preliminary injunction. Later, the district court entered a final judgment, ruling that the new TWC rules are inconsistent with and preempted by the Medicaid statute. The district court reasoned that recipients could *only* have their benefits terminated for "refusing to work" under 42 U.S.C. § 607(d). The district court held that the new rules imposed requirements in addition to those set forth in 42 U.S.C. § 607(d). Specifically, the district court declared invalid, "[40 TEX. ADMIN. CODE] . . . [§] 811.2(11)(A) and (B), 811.25(a)(1)(A), and 811.41(d)(3)(A)-(D), to the extent those rules apply the job readiness activities in . . . 811.41(d)(3) and the parenting skills training in . . . 811.52(4), (5), (6), and (7) as grounds for terminating Medicaid benefits."

Defendants appeal. They contend the definition of "job search and job readiness," an enumerated work activity under 42 U.S.C. § 607(d), includes ensuring child immunizations, wellness check-ups, school attendance and abstaining from substance abuse. Thus, they contend that the district court failed to properly defer to TWC's reasonable statutory interpretation. Plaintiffs respond that the plain language of the statute precludes TWC's redefinitions. Thus, they argue that there is no deference due and that the district court properly granted declaratory judgment.

II

In 1996, Congress reformed welfare with the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA"). PRWORA replaced Aid to Families with Dependent Children with Temporary Assistance to Needy Families. 42 U.S.C. § 601 - 619. The purpose of the new program is "to increase the flexibility of States in operating a program designed to" meet certain goals including

3

"end[ing] the dependence of needy parents on government benefits by promoting job preparation, work, and marriage." 42 U.S.C. § 601(a). As a condition of receiving TANF grants, states must ensure that certain percentages of recipients participate in "work activities." 42 U.S.C. § 607(a). PRWORA lists twelve work activities:

> (1) unsubsidized employment;
> (2) subsidized private sector employment;
> (3) subsidized public sector employment;
> (4) work experience (including work associated with the refurbishing of publicly assisted housing) if sufficient private sector employment is not available;
> (5) on-the-job training;
> (6) job search and job readiness assistance;
> (7) community service programs;
> (8) vocational educational training (not to exceed 12 months with respect to any individual);
> (9) job skills training directly related to employment;
> (10) education directly related to employment, in the case of a recipient who has not received a high school diploma or a certificate of high school equivalency;
> (11) satisfactory attendance at secondary school or in a course of study leading to a certificate of general equivalence, in the case of a recipient who has not completed secondary school or received such a certificate; and
> (12) the provision of child care services to an individual who is participating in a community service program.

42 U.S.C. § 607(d)(1)-(12). A recipient is engaged in work if he or she is participating in one or more of these activities for at least thirty hours per week in certain proportions. 42 U.S.C. § 607(c). A state must submit a plan outlining its proposal to "[r]equire a parent or caretaker receiving assistance under the program to engage in work (as defined by the State) once the State determines the parent or caretaker is ready to engage in work." 42 U.S.C. § 602(a)(1)(A)(ii). The plan must "[e]nsure that parents and caretakers receiving assistance under the program engage in work activities in accordance with section 607." 42 U.S.C. § 602(a)(1)(A)(iii).

When an individual refuses to participate in a work activity, PRWORA requires the state to

4

"(A) reduce the amount of assistance otherwise payable to the family pro rata (or more, at the option of the State) . . . ; or (B) terminate such assistance, subject to such good cause and other exceptions as the State may establish." 42 U.S.C. § 607(e)(1). In addition to losing TANF assistance for refusing to work, a recipient may lose Medicaid benefits. 42 U.S.C. § 1396u-1(b)(3)(A)(iii) (giving states the option to terminate medical assistance for refusing to work pursuant to 42 U.S.C. § 607(e)(1)(B)).

A

Medicaid, authorized under Title XIX of the Social Security Act of 1965, is a cooperative federal-state program through which the federal government provides financial aid to states that furnish medical assistance to eligible low-income individuals. *See* 42 U.S.C. § 1396 - 1396v; *see also Atkins v. Rivera*, 477 U.S. 154, 156 (1986); *Louisiana v. United States Dep't. of Health and Human Servs.*, 905 F.2d 877, 878 (5th Cir. 1990). States electing to participate in the program must comply with requirements imposed by the Act and regulations of the Secretary of Health and Human Resources. *See Evergreen Presbyterian Ministries, Inc. v. Hood*, 235 F.3d 908, 915 (5th Cir. 2000) ("The [Medicaid] program is voluntary; however, once a state chooses to join, it must follow the requirements set forth in the Medicaid Act and in its implementing regulations."). The federal government and states share the costs of medical care for eligible participants.

The Medicaid Act allows states to terminate medical assistance in certain circumstances. Specifically, the Act states

> Option to terminate medical assistance for failure to meet work requirement.
> (A) Individuals receiving cash assistance under TANF
> In the case of an individual who--
> (i) is receiving cash assistance under a State program funded under part A of subchapter IV of this chapter,
> (ii) is eligible for medical assistance under this subchapter on a basis not related to section 1396a(l) of this title, and

5

(iii) *has the cash assistance under such program terminated pursuant to section 607(e)(1)(B) of this title* (as in effect on or after the welfare reform effective date) *because of refusing to work*,
the State may terminate such individual's eligibility for medical assistance under this subchapter until such time as there no longer is a basis for the termination of such cash assistance because of such refusal.

42 U.S.C. § 1396u-1(b)(3) (emphasis added). Therefore, states have the option to terminate a recipient's medical assistance for "refusing to work."

B

In 2003, the Texas legislature passed new legislation implementing PRWORA. The statute states, "[t]he department shall require each adult recipient to sign a bill of responsibilities that defines the responsibilities of the state and of the recipient and encourages personal responsibility." TEX. HUM. RES. CODE ANN. § 31.0031(a). In addition, "[t]o the extent allowed by federal law, [THHSC] . . . may deny medical assistance for a person who is eligible for financial assistance but to whom that assistance is not paid because of the person's failure to cooperate [with the requirements of the responsibility agreement]." TEX. HUM. RES. CODE ANN. § 31.0032(c).

THHSC subsequently issued a rule stating that "(TANF)-level medical assistance recipient whose TANF cash assistance was terminated pursuant to . . . [42 U.S.C. § 607(e)(1)(B)] because of refusing to work without good cause is ineligible for Medicaid until there is no longer a basis for the termination of cash assistance because of such refusal, as provided by . . . 42 U.S.C. § 1396u-1(b)(3)." 1 TEX. ADMIN. CODE § 374.11.

TWC then promulgated rules of implementation. Section 811.2(11) defines persons "engaged in work" for 42 U.S.C. § 607 purposes as those individuals who cooperate with "(A) all requirements set forth in the family employment plan, . . . ; and (B) all TANF Core and Non-Core activities . . .

6

." 40 TEX. ADMIN. CODE § 811.2(11). The relevant TANF core activities include "job search and job readiness assistance" which is described in 40 TEX. ADMIN. CODE § 811.41. 40 TEX. ADMIN. CODE § 811.25(a)(1)(A). This includes

> (A) activities associated with maintenance of their children's health and dental checkups, as required by §3.301 of this title;
> (B) activities associated with maintenance of their children's immunizations, as required by §3.301 of this title;
> (C) activities necessary to ensure their children's school attendance, as required by §3.301 of this title; and
> (D) activities necessary to abstain from the use, possession, or sale of controlled substances, and to abstain from alcohol abuse, including participation in counseling.

40 TEX. ADMIN. CODE § 811.41(d)(3). The family employment plan references the recipient's "responsibility to participate in job readiness activities as set forth in § 811.41(d)." 40 TEX. ADMIN. CODE § 811.23(e). TANF non-core activities include

> (4) instruction on the necessity of maintaining children's health to include immunizations and dental checkups; (5) instruction on the necessity of ensuring children's school attendance; (6) instruction on the necessity of abstaining from using, possessing, or selling controlled substances; and (7) instruction on the necessity of abstaining from abusing alcohol.

40 TEX. ADMIN. CODE § 811.52. Thus, under TWC's new rules, medical assistance can be terminated for those recipients who fail to ensure their children's immunizations, wellness check-ups, school attendance or who fail to avoid substance abuse.

### III

The only issue in this case is whether the termination of medical assistance pursuant to 40 TEX. ADMIN. CODE § 811.2(11)(A) and (B) is authorized by 42 U.S.C. § 607(e)(1)(B). We review questions of statutory interpretation *de novo*. *Evergreen Presbyterian Ministries*, 235 F.3d at 918. The Defendants contend that the district court failed to properly defer to TWC's interpretation of 42

U.S.C. § 607(d)(6), *i.e.*, "job search and job readiness." The Plaintiffs argue that the plain language of the statute unambiguously precludes TWC's interpretations and, thus, deference is inapplicable.

"When construing a federal statute that has been interpreted by an administrative agency, courts look first to the language of the statute." *Houston Police Officers' Union v. City of Houston*, 330 F.3d 298, 302 (5th Cir. 2003). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). "If the statute is ambiguous, however, 'the court does not simply impose its own construction on the statute, as would be necessary in the absence of administrative interpretation. Rather, . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute.'" *Houston Police Officers' Union*, 330 F.3d at 302-03 (quoting *Chevron*, 467 U.S. at 843). Generally, a statute is ambiguous if it is "capable of being understood in two or more possible senses or ways." *Chickasaw Nation v. United States*, 534 U.S. 84, 90 (2001).

"We have consistently held that a regulation should be construed to give effect to the natural and plain meaning of its words." *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 595 (5th Cir. 2004). Both Defendants and Plaintiffs claim that the plain meaning of the statute supports their arguments. Defendants contend that recipients are more likely to obtain and keep jobs if they are not incapacitated by substance abuse and their children are healthy and in school. Thus, they argue, the requirements of 40 TEX. ADMIN. CODE § 811.41(d)(3) fall under the plain language of § 607(d)(6), *i.e.*, "job search and job readiness." Plaintiffs argue that no reasonable interpretation of "job search and job readiness" includes the failure to ensure child immunization, wellness check-ups, school attendance and the failure to refrain from substance abuse. We find the Plaintiffs' argument more persuasive.

8

A recipient's medical assistance may be terminated for refusing to participate in the twelve work activities enumerated in 42 U.S.C. § 607(d). 42 U.S.C. § 607(e)(1)(B). None of the twelve work activities include child immunizations, wellness check-ups, school attendance or avoidance of substance abuse. The closest work activity, "job search and job readiness" cannot be construed to encompass ensuring child immunizations, wellness check-ups, school attendance and refraining from substance abuse. The plain and natural meaning of § 607 does not support the contention that a recipient's assistance could be terminated for "refusing to work" *when the recipient is working full-time*. "Job search and job readiness" *precede* employment. Recognizing this, Congress limited the number of weeks of job search and readiness assistance that may count as a work activity, 42 U.S.C. § 607(c)(2)(A)(i), whereas one would have to continuously ensure compliance with 40 TEX. ADMIN. CODE § 811.41(d)(3).

There are numerous activities that bear some relation to obtaining and keeping work; however, Texas cannot use these activities to terminate medical assistance. Texas cannot add additional requirements for Medicaid eligibility. *See Jones v. T- H-*, 425 U.S. 986 (1976) (affirming a three-judge district court's holding that a Utah regulation was inconsistent with Title XIX because of an additional requirement for obtaining medical assistance ); *Carleson v. Remillard*, 406 U.S. 598 (1972) (invalidating a state law preventing children whose fathers were serving in the military from receiving AFDC benefits because Congress did not intend to exclude a class of benefit recipients).

In addition to the plain language of the actual provision, the rest of the statute strongly suggests that TWC's interpretations are impermissible. When interpreting a portion of a statute, courts must consider the statute in its entirety. *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 36 (1998) ("[A] statute is to be considered in all its parts when construing any

9

one of them."). Other sections of TANF address the personal responsibility requirements of 40 TEX. ADMIN. CODE § 811.41(d)(3). Section 608(b)(3) authorizes states to reduce TANF assistance for failure to comply with an imposed "individual responsibility plan," which "may include a requirement that the individual . . . keep school age children in school, immunize children, attend parenting and money management classes." 42 U.S.C. § 608(b)(2)(A)(ii). Similarly, § 604 provides penalties for a parent's failure to ensure that dependent minor children attend school. 42 U.S.C. § 604(i).

Defendants claim that these sections, which provide only for a reduction in TANF assistance, complement the states' flexibility and do not preclude the option to terminate medical assistance for the same infractions. For this proposition, Defendants cite § 608(b)(3), which states "[i]n addition to any other penalties required under the State program funded under this part, the State may reduce, by such amount as the State considers appropriate, the amount of assistance otherwise payable under the State program to a family that includes an individual who fails without good cause to comply with an individual responsibility plan signed by the individual." 42 U.S.C. § 608(b)(3).

The Plaintiffs contend that these sections indicate that Congress wanted to give states the flexibility to reduce TANF for various personal responsibility failures. Had Congress wanted to give states the option to terminate medical assistance for these failures, it could have easily done so. We find this argument persuasive. "'[W]here Congress includes particular language in one section of a statute but omits it in another . . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Defendants contend that § 602 expressly permits Texas to define "work activities." Section 602 obligates states to outline how they will "[r]equire a parent or caretaker receiving assistance under

10

the program to engage in work (*as defined by the State*) . . . ." 42 U.S.C. § 602(a)(1)(A)(ii) (emphasis added). As the Plaintiffs correctly argue, however, this plan must still be "in *accordance with § 607 of this title.*" 42 U.S.C. § 602(1)(1)(A)(iii) (emphasis added). Thus, while Texas has flexibility to define work activities, it must do so within the confines of 42 U.S.C. §607(d)(1)-(12).

Defendants place great weight on the preamble to TANF regulations, which states, "we chose not to define the individual work activities . . . in favor of giving States greater flexibility." Temporary Assistance for Needy Families Program (TANF), 64 Fed. Reg. 17,720, 17,776 (April 12, 1999). Once again, TWC is limited by 42 U.S.C. § 607(d). "As a fundamental rule of statutory interpretation, specific provisions trump general provisions." *Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 676 (5th Cir. 2003). Section 607(d)(1)-(12) defines the broad parameters of "work activities." While states have great flexibility within those parameters, they are still bound by them. The preamble does not broaden the scope of the plain language of § 607(d).

Defendants' reliance on the doctrine of cooperative federalism fails to exempt them from the plain language of § 607(d)(1)-(12). "[T]he Medicaid statute . . . is designed to advance cooperative federalism." *Wisconsin Dep't of Health and Family Servs. v. Blumer*, 534 U.S. 473, 495 (2002). When interpreting statutes based on cooperative federalism, the Supreme Court has explained, "we have not been reluctant to leave a range of *permissible choices* to the States, at least where the superintending federal agency has concluded that such latitude is consistent with the statute's aims." *Id.* (emphasis added). Here, TWC's interpretation of the clear language of § 607 is impermissible. Thus, the doctrine of cooperative federalism is inapplicable.

Defendants proffer a letter from the Assistant Secretary for Children and Families of the Department of Health and Human Services to support their contention that TWC rules are consistent

11

with § 607(d). The letter, written to Congressman Lloyd Doggett, states that "no conflict between Texas' rules and current Federal law is readily apparent." Plaintiffs' contention that the letter addresses TANF and not Medicaid is irrelevant because 42 U.S.C. § 1396u-1(b)(3)(A)(iii) expressly references § 607(e)(1)(B) of TANF. The letter, however, still receives no legal weight. First, the "plain language of the statute is otherwise." *Kai v. Ross*, 336 F.3d 650, 655 (8th Cir. 2003). In addition, "the letter is not a regulation of the Department of Health and Human Services, nor is it part of generally published advice, for example, a practice manual distributed nationwide." *Id*. Thus, the letter is only considered for its inherent persuasive value, which we find minimal.

The requirements of 40 TEX. ADMIN. CODE § 811.41(d)(3) are inconsistent with the plain language of 42 U.S.C. § 607(d)(1)-(12). None of the twelve work activities listed in § 607(d) include child immunizations, wellness check-ups, child school attendance or substance abuse avoidance. Had Congress intended to include these requirements, it easily could have. Indeed, elsewhere Congress provided sanctions for these failures. *See* 42 U.S.C. §§ 604(i), 608(b)(2)(A)(ii). Since "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. Thus, we need not address deference to TWC's interpretation.

IV

The district court judge properly concluded that 40 TEX. ADMIN. CODE § 811.2(A) and (B) are inconsistent with the federal Medicaid statute, as they impose additional requirements for obtaining benefits. Accordingly, the district court's order declaring invalid 40 TEX. ADMIN. CODE § 811.2(A) and (B), § 811.41(d)(3)(A)-(D), to the extent they apply the job readiness activities in § 811.41(d)(3) and the parenting skills training in § 811.52(4), (5), (6), and (7) as grounds for terminating Medicaid

12

by defining, or to the extent Defendants otherwise redefine by rule or through the personal responsibility agreement that recipients must sign, "work" or "work requirements" or "work activities" or "job readiness" to include obtaining children's immunizations, check-ups, school attendance, or refraining from substance abuse, or any other non-work requirements for purposes of Medicaid eligibility is AFFIRMED.