Keenan M. SCOTT, Thomas Logan, John Loomis, Robert Davidson, and Michael C. Demartino, et al., Plaintiffs,

v.

CITY OF NEW YORK and The New York City Police Department, Defendants.

No. 02 Civ. 9530(SAS).

United States District Court, S.D. New York.

June 23, 2004.

---

Thomas P. Puccio, Law Offices of Thomas P. Puccio, New York City, John T. Brennan, Law Offices of John Brennan, PC, Brooklyn, NY, Will Aitchison, Aitchison & Vick, Inc., Portland, OR, for Plaintiffs.

Charles Jackson, Lorie Elizabeth Almon, Peter A. Walker, Edward W. Bergmann, Brendan Sweeney, Seyfarth Shaw LLP, New York City, Blanche Greenfield, Michele Molfetta, Assistants Corporation Counsel, New York City Law Department, New York City, for Defendants.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiffs bring this action against the City of New York ("City") and its Police Department ("NYPD") (collectively, "defendants") on behalf of themselves and those similarly situated, alleging violations of the Fair Labor Standards Act ("FLSA").[1] Defendants now move to dismiss the first count of the Amended Complaint ("Count One") for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Defendants also seek to join the Patrolmen's Benevolent Association ("PBA") and the Detectives' Endowment Association ("DEA") (collectively, "Unions") as necessary, non-aligned parties under Rule 19(a). For the reasons set forth below, defendants' motions to (1) dismiss Count One and (2) join the Unions are denied.

## I. FACTS

### A. Background

Plaintiffs are current and former New York City police officers and detectives employed by the NYPD.[3] They are represented for collective bargaining purposes by the PBA and the DEA, respectively.[4] The collective bargaining agreements ("CBAs") entered into by the Unions and the NYPD govern the terms and conditions of their employment, such as compensation and overtime, number of hours worked per year, annual leave, length of each shift ("tour of duty"), and benefits.[5]

---

1. 29 U.S.C. § 201, *et seq.* Since the commencement of this litigation, approximately 16,000 former or current police officers and *detectives have joined in this collective action* pursuant to section 216(b).

2. Specifically, plaintiffs allege that defendants willfully violated, and continue to violate, "the overtime compensation requirements of section 207(*o*) of the FLSA by employing a compensatory time-off system that fails to comply with the FLSA." Amended Complaint ("Am.Compl.") ¶ 13.

3. *See id.* ¶ 4.

4. *See id.* ¶ 15.

5. *See, e.g.,* 1995–2000 PBA/NYC CBA, Ex. B to 2/13/04 Declaration of Peter A. Walker, counsel for defendants, in Support of Defendants' Motion to Dismiss ("Walker Decl.");

1996–2001 DEA/NYC CBA, Ex. C to Walker Decl. Although these agreements do not cover the entire period at issue, neither party asserts that the relevant provisions have changed over this time period and as such, I consider these CBAs to be representative for purposes of this motion.

In considering a motion to dismiss, courts may not consider matters outside the pleadings. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). For purposes of Rule 12(b), the complaint includes " 'any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.' " *Id.* (quoting *International Audiotext Network, Inc. v. American Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995)). Because the PBA/NYC and the DEA/NYC CBAs are referenced in the Amended Complaint, albeit not attached, I shall consider them in deciding the motion to dismiss. *See* Am. Compl. ¶ 18.

Under these CBAs, police officers and detectives who have accrued overtime hours may either receive a monetary payment or time off as compensation for those hours. Specifically, both the PBA/NYC and DEA/NYC CBAs provide:

All ordered and/or authorized hours in excess of forty (40) hours in any week or in excess of the hours required of an employee by reason of the employee's regular duty chart if a week's measurement is not appropriate, whether of an emergency nature or of a non-emergency nature, shall be compensated for either by cash payment or compensatory time off, at the rate of time and one-half, at the sole option of the employee. Such cash payments or compensatory time off shall be computed on the basis of completed fifteen (15) minute segments:[6]

### B. The Complaint

### 1. Count One

Count One is premised on defendants' policy of improperly disallowing plaintiffs' use of compensatory time off in violation of the FLSA.[7] In particular, plaintiffs aver that when City police officers and detectives who "originally received compensatory time off," request to take this time, they are routinely denied under circumstances "where no undue disruption of the City's operations would result."[8] Plaintiffs assert that defendants' compensatory time off system requires them to work for extended periods without the possibility of taking compensatory non-working days,

resulting in the accrual of unpaid overtime hours.[9]

### 2. Other Claims

The Complaint alleges four additional FLSA violations. *First*, plaintiffs argue that defendants routinely force police officers and detectives to "agree in advance to accept compensatory time off in lieu of cash compensation in order ... to be eligible for specified overtime work opportunities."[10] In addition, where officers or detectives have earned cash compensation for a specific number of overtime hours (typically 35 hours per month or 105 hours per quarter), they are forced to accept compensatory time off in lieu of cash payment for any additional overtime hours.[11] Plaintiffs claim that defendants' policies are not authorized by the governing CBAs.[12] *Second*, plaintiffs state that defendants have assigned, and continue to assign, officers and detectives to schedules that require them to work more than 171 hours in a 28–day period, without adequate overtime compensation.[13] *Third*, plaintiffs claim that defendants' failure to include "shift differential and longevity pay in computing the regular rate of pay in which the named Plaintiffs and all similarly situated police officers and detectives have worked overtime" violates section 7 of the FLSA.[14] *Fourth*, defendants are accused of incorrectly calculating the hours worked by their employees, thereby depriving those employees of overtime hours earned.[15]

---

6. PBA/NYC CBA art. III, § 1(a), at 2; *accord* DEA/NYC CBA art. III, § 1(a), at 2.

7. *See* Am. Compl. ¶¶ 9–13.

8. *Id.* ¶¶ 11–12.

9. *See id.*

10. *Id.* ¶ 16.

11. *See id.* ¶ 17.

12. *See id.* ¶ 18.

13. *See id.* ¶ 31.

14. *Id.* ¶ 35.

15. *See id.* ¶ 38.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

"Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint *only* if it is clear that no relief could be granted under *any* set of facts that could be proved consistent with the allegations.' "[16] Thus, a plaintiff need only plead " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[17] Simply put, "Rule 8 pleading is extremely permissive."[18]

At the motion to dismiss stage, the issue " 'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.' "[19]

The task of the court in ruling on a Rule 12(b)(6) motion is " 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' "[20] When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor.[21]

### B. Rule 19(a)

Rule 19(a) provides that a person subject to service of process whose joinder will not deprive the court of jurisdiction must be joined in an action if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may

(i) as a practical matter impair or impede the person's ability to protect that interest or

(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

If such a person cannot be joined, then the court must consider whether "in equity and good conscience" the case should be dismissed.[22] Rule 19 protects several interests: the parties' interest in obtaining a complete resolution of their dispute, the interests of others who might be prejudiced if the matter were decided in their absence, and the public's interest in avoiding multiple lawsuits on the same subject matter.[23]

**16.** *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (emphasis added) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

**17.** *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (quoting Fed.R.Civ.P. 8(a)).

**18.** *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir.2004).

**19.** *Phelps v. Kapnolas*, 308 F.3d 180, 184–85 (2d Cir.2002) (per curiam) (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998)).

**20.** *Pierce v. Marano*, No. 01 Civ. 3410, 2002 WL 1858772, at *3 (S.D.N.Y. Aug. 13, 2002) (quoting *Saunders v. Coughlin*, No. 92 Civ. 4289, 1994 WL 88108, at *2 (S.D.N.Y. Mar. 15, 1994)).

**21.** *See Chambers*, 282 F.3d at 152.

**22.** Fed.R.Civ.P. 19(b).

**23.** *See* Advisory Committee Note on the 1966 Amendment to Fed.R.Civ.P. 19(a); *cf. Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–11, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) (discussing Rule 19(b)).

## III. DISCUSSION

### A. Motion to Dismiss

 In order to evaluate whether Count One states a claim, this Court must first determine the meaning of section 7(o) of the FLSA. When confronted with a question of statutory interpretation, the Supreme Court has counseled that before reviewing an interpretation of an administrative agency, a court must first determine whether the "intent of Congress is clear" and the meaning of the statute is unambiguous.[24] If the court finds that congressional intent as to the disputed issue is clear, then contrary administrative constructions must be rejected. However, if a court finds that the statute is "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."[25]

### 1. FLSA Section 7(o) and Department of Labor ("DOL") Regulations

Section 7(o) of the FLSA provides that, under limited circumstances, public agencies may use compensatory time off (at a rate not less than one-and-one-half hours per hour of overtime compensation owed) in lieu of overtime pay.[26] The use of compensatory time is only permissible: (1) when granted pursuant to "applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees" or "an agreement or understanding arrived at between the employer and employee before the performance of the work" and (2) where "the employee has not accrued compensatory time in excess of the limit applicable to the employee [under the FLSA]."[27]

Under the FLSA, an employee of a qualifying public agency:

(A) who has accrued compensatory time off . . ., and

(B) who has requested the use of such compensatory time, shall be permitted by the employee's employer to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency.[28]

The DOL, which is responsible for the administration, interpretation, and application of the FLSA, has promulgated regulations explaining various provisions of the act. For instance, section 553.25 states that "[s]ection 7(o)(5) . . . provides that any employee of a public agency who has accrued compensatory time and requested use of this [ ] time, shall be permitted to use such time off within a 'reasonable period' after making the request, if such use does not 'unduly disrupt' the operations of the agency."[29] The DOL regulations further provide that an employee has the right to use her compensatory time off and "must not be coerced to accept more com-

---

24. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *see also id.* at 843, 104 S.Ct. 2778.

25. *Id.* at 843, 104 S.Ct. 2778.

26. *See* 29 U.S.C. § 207(o)(1). The terms "compensatory time" and "compensatory time off" are used interchangeably for purposes of the FLSA. For purposes of the act, "compensatory time off is paid time off the job which is earned and accrued by an employee in lieu of immediate cash payment for employment in excess of the statutory hours for which overtime compensation is required by section 7 of the FLSA." 29 C.F.R. § 553.22(a).

27. 29 U.S.C. § 207(o)(2).

28. 29 U.S.C. § 207(o)(5).

29. 29 C.F.R. § 553.25(a).

pensatory time than an employer can realistically and in good faith expect to be able to grant within a reasonable period of his or her making a request for use of such time."[30]

The regulations set forth the agency's interpretation of the phrase "reasonable period":

> Whether a request to use compensatory time has been granted within a "reasonable period" will be determined by considering the customary work practices within the agency based on the facts and circumstances in each case. Such practices include, but are not limited to (a) the normal schedule of work, (b) anticipated peak workloads based on past experience, (c) emergency requirements for staff and services, and (d) the availability of qualified substitute staff.[31]

However, the regulations also provide that to the extent that the phrase "reasonable period" is already defined in the governing CBA, the CBA will control.[32] The regulations also define the term "unduly disrupt":

> When an employer receives a request for compensatory time off, it shall be honored unless to do so would be "unduly disruptive" to the agency's operations.

Mere inconvenience to the employer is an insufficient basis for denial of a request for compensatory time off. For an agency to turn down a request from an employee for compensatory time off requires that it should reasonably and in good faith anticipate that it would impose an unreasonable burden on the agency's ability to provide services of acceptable quality and quantity for the public during the time requested without the use of the employee's services.[33]

## 2. Interpretation of Section 7(o) of the FLSA

■ The parties dispute the meaning of the words "reasonable period" in section 7(o) of the FLSA. On the one hand, plaintiffs argue that these words could refer to the period of advance notice preceding the date(s) on which the employee seeks to use her compensatory time.[34] Under this interpretation, if reasonable notice is given, the employer must allow the employee to take those specifically requested days off, unless undue disruption to its operations would result. On the other hand, defendants contend that this phrase refers to a time period reasonably proximate to the specific day requested.[35] Under this view,

---

**30.** 29 C.F.R. § 553.25(b).

**31.** 29 C.F.R. § 553.25(c)(1).

**32.** *See* 29 C.F.R. § 553.25(c)(2).

**33.** 29 C.F.R. § 553.25(d).

**34.** Specifically, plaintiffs contend that pursuant to section 7(o) of the FLSA and the accompanying DOL regulations, defendants must allow an employee to use her compensatory time on the specific days requested, subject to the following two restrictions. *First,* the employee must provide a "reasonable period" of advance notice so that defendants can plan for her absence accordingly. *See* Plaintiffs' Memorandum of Law Regarding § 207(o)(5) of the FLSA ("Pls. Rule 12(b)(6) Mem.") at 12. *Second,* if permitting the em-

ployee to take off on those particular days would "unduly disrupt" their operations, defendants are not obligated to grant her request. *See id.*

**35.** In particular, defendants submit that section 7(o) of the FLSA only obligates them to grant applications to use compensatory time "within a reasonable period," *i.e.,* within a certain "temporal range following the date upon which the request was made." Defendants' Memorandum of Law in Support of Their Motion to Dismiss Count One of Plaintiffs' Complaint ("Defs. Rule 12(b)(6) Mem.") at 5. Defendants further argue that this "does not mean ... that the employer has no discretion and must automatically grant the request to use compensatory time on a specific day, or at the specific time requested, unless an undue disruption would result." *Id.*

an employer is only obligated to permit the employee to use her compensatory time within a reasonable time span prior to or following the asked-for date(s).

Not surprisingly, both parties assert that adoption of their opponents' interpretation fails to give effect to every clause of the statute. Specifically, plaintiffs argue that defendants' reading abrogates the "unduly disrupt" standard and defendants' contend that plaintiffs' reading renders the words "within a reasonable time after making the request" superfluous.[36]

This Circuit has not yet interpreted section 207(*o*) and support exists for both plaintiffs' and defendants' positions. In recent decisions, the Fifth and Ninth Circuits have concluded that the statute unambiguously permits an employer to grant compensatory time off within a reasonable time *from the date requested* by the employee, unless it would unduly disrupt the employer's operations.[37] Finding the statutory language unambiguous, they did not consider the DOL's view of the statute. But this interpretation stands in direct opposition to the opinion of at least one district court and the DOL.[38]

In 2003, the Fifth Circuit decided *Houston*, which presented the question of whether the FSLA "requires a public agency to allow its employees the use of accrued compensatory time on those days specifically requested by the employees, unless to do so would 'unduly disrupt' the agency's function."[39] In that case, the

police officers' union sued the City of Houston over the Houston Police Department's ("HPD") compensatory time policies. In particular, the HPD used a log known as the "Red Book," listing the officers scheduled to be off duty on any given day. The Red Book contained a limited number of spaces, corresponding to the shift commander's estimate of the unit's staff requirements. To use compensatory time, an officer had to sign his name in his unit's Red Book for the day(s) he wanted to take off, and if the slots were already filled, his request would, as a matter of policy, be denied. The court decided that:

> The text of section 207(*o*)(5) plainly defines the period between the date the employee submits his request and the date the employer allows the employee to use the comp time: the employee "shall be permitted ... to use such [comp] time within a reasonable period after making the request." ... [M]andating a "reasonable period" for use of comp time is different from mandating the employee's chosen dates. The language offers a span of time to the employer, the beginning of which is the date of the employee's request.[40]

In response to the argument that the words "unduly disrupt" suggest that the "reasonable period" refers to "the time between [the] intended and actual date of comp-time consumption,"[41] the court explained that:

> should be noted that the procedural posture of these cases differs from this case, as *Mortensen*, *Houston*, and *DeBraska* involved summary judgment.

**36.** *See* Pls. Rule 12(b)(6) Mem. at 21; Defs. Rule 12(b)(6) Mem. at 5.

**37.** *See Mortensen v. County of Sacramento*, 368 F.3d 1082, 1090 (9th Cir.2004); *Houston Police Officers' Union v. City of Houston*, 330 F.3d 298, 303 (5th Cir.2003), *cert. denied*, 540 U.S. 879, ——, 124 S.Ct. 300, 157 L.Ed.2d 143 (2003).

**38.** *See DeBraska v. City of Milwaukee*, 131 F.Supp.2d 1032, 1034 (E.D.Wis.2000). It

**39.** *Houston*, 330 F.3d at 300.

**40.** *Id.* at 303.

**41.** *Id.*

[i]nstead of obscuring the proper object of the "reasonable period" clause, the "unduly disrupt" clause serves to clarify its obvious meaning. The "reasonable period clause" imposes upon the employer the obligation to facilitate the employee's timely usage of his accrued compensatory time. The "unduly disrupt" clause suggests conditions, however, that would release the public employer from the previously imposed condition. The statute, thus construed, reflects a balance between obligation and exemption.[42]

The Ninth Circuit recently decided a case involving similar circumstances. In *Mortensen*, a deputy sheriff for Sacramento County sued the county for its failure to permit him to use his compensatory time as requested: on "March 11, 2001 *only.*"[43] The county scheduled leave by maintaining a log book in which the number of available slots corresponded to the employer's minimum staffing requirements. The Ninth Circuit adopted the reasoning of the Fifth Circuit, noting that "[p]rior Supreme Court authority and [Ninth Circuit authority] are in harmony with the Fifth Circuit's analysis."[44] The court concluded that "the text of § 207(*o*)(5) unambiguously states

that once an employee requests the use of [compensatory time off], the employer has a reasonable period of time to allow the employee to use accrued time. Because the statutory language is unambiguous, we need not defer to the regulations and opinion letter."[45] The court did, however, turn to the regulations and the CBA to decide what constituted a "reasonable period."[46] Because the parties had entered into a CBA, providing for the mandatory use of compensatory time within one year of accrual, the court found that "the county [was] not in violation of the FLSA unless it fail[ed] to follow its leave book policy or refuse[d] to grant the use of [compensatory time off] within one year of a request."[47]

In *DeBraska*, plaintiffs, current and former Milwaukee police officers, argued that their employer routinely rejected applications for compensatory time on occasions when acceding to the officers' requests would not cause undue disruption.[48] The *DeBraska* court found the statute to be ambiguous. Accordingly, it gave considerable deference to the DOL's interpretation as presented in its regulations, opinion letters, and amicus brief submitted by the Secretary of Labor. These materials sup-

---

42. *Id.*

43. *Mortensen*, 368 F.3d at 1085 (emphasis added).

44. *Id.* at 1089 (citing *Christensen v. Harris County*, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000)). In *Christensen*, the Supreme Court held that because a public entity may both "require an employee to take time off work, *and* . . . use the money it would have paid in wages to cash out accrued compensatory time," logically, that employer may do both at once—*i.e.*, compel its employees to use compensatory time. *Christensen*, 529 U.S. at 585, 120 S.Ct. 1655. Moreover, an employer can "choose the specific dates that an employee must used forced [compensatory time]." *Mortensen*, 368 F.3d at 1089. This is consistent with the objective of the FLSA: to

" 'ensure that each employee covered by the Act . . . would be protected from the evil of overwork.' " *Christensen*, 529 U.S. at 585, 120 S.Ct. 1655 (quoting *Barrentine v. Arkansas—Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981)).

45. *Mortensen*, 368 F.3d at 1090.

46. *Id.* at 1090–91.

47. *Id.* at 1091.

48. Notably, in *DeBraska*, when an employee's requested date could not be accommodated due to staffing demands, the employer almost always offered an alternative time within a week of the requested dates. *DeBraska*, 131 F.Supp.2d at 1034.

ported plaintiffs' interpretation—that "reasonable period" means that "the employee must give adequate notice that he wants to use comp time on a particular day, thereby giving the employer time to plan and to determine whether the request can be granted."[49] Defendant's view was that "reasonable period" refers to the "time period between the date the employee requests off and the date the city will actually allow him to take off."[50] The *DeBraska* court noted that "both readings [were] plausible" but ultimately decided that the view advanced by the Secretary and the plaintiffs was more reasonable. The court therefore concluded that, under the FLSA, "once the employee gives the employer a reasonable period within which to grant the request, the employer must do so unless undue disruption would result."[51]

In light of the case law interpreting section 207(*o*), plaintiffs' reading of the statute is not implausible. Nonetheless, the better view is that of defendants—that the "reasonable period" referenced in section 207(*o*)(5) refers to the time period between the date for which the employee applies for leave and the date on which that leave is actually granted. Section 207(*o*) contains a clear expression of congressional intent as to the disputed issue— the meaning of "reasonable period." For the reasons set forth by the *Houston* and *Mortensen* courts, the plain meaning of the statute is clear and gives effect to all of the provisions of the statute. For instance,

the phrase "unduly disrupts" is not subsumed by the words "reasonable period," but provides an exception to the employer's statutory obligation to accommodate the employee's request within a "reasonable period." Because the FLSA is unambiguous with respect to this issue, exploration of the DOL's position on this matter is not warranted.

### 3. Stating a Claim Under Rule 12

■ For the reasons stated in the preceding section, to state a claim under section 7(*o*) of the FLSA, plaintiffs must allege that the NYPD and the City did not grant their applications to use compensatory time within a time period reasonably proximate to the date(s) requested. Further, they must assert that if defendants did not comport with this obligation, that their failure to do so was not excused by undue disruption to their operations.

Crediting plaintiffs' averments as true and drawing all inferences in plaintiffs' favor, they have easily satisfied the liberal pleading requirements of Rule 8. *First,* they have alleged that defendants have made and continue to make no effort to honor their applications to take compensatory time on *any date,* reasonably close to the specific date(s) requested or otherwise.[52] *Second,* they have alleged that their requests are routinely denied without any assessment of undue disruption to defendants' operations.[53] Defendants have

---

49. *Id.*

50. *Id.*

51. *Id.*

52. *See* Am. Compl. ¶¶ 11–12; *see also* Plaintiffs' Reply Memorandum of Law Regarding Section 207(*o*)(5) of the FLSA at 8–9. Because the governing CBAs do not define what constitutes a "reasonable period," the meaning of reasonable period is derived from the DOL regulations. These regulations provide

that the meaning of "reasonable period" turns on the "customary work practices within the agency based on the facts and circumstances in each case." *See* 29 C.F.R. § 553.25(a). At this early stage in the proceedings, it is enough for plaintiffs to allege that defendants made no attempt to permit the use of compensatory time within any time period following or preceding the date(s) requested.

53. *See* Am. Compl. ¶ 11.

not shown that plaintiffs can prove no set of facts consistent with these allegations. Accordingly, defendants' motion to dismiss Count One of the Complaint is denied.

## B. Motion for Joinder

### 1. General Principles Governing the Joinder of Unions

 "[B]ecause unions occupy a somewhat unique legal position, certain issues and problems [may] require special attention by courts called upon to decide questions of compulsory joinder."[54] As a general matter, "the union may be found to be a party to be joined if feasible under Rule 19(a) in actions brought by employees against their employers requiring an adjudication that might have a significant impact on the collective-bargaining agreement because of the union's interest in the operation of that contract."[55] However, courts considering the joinder of unions in FLSA actions have generally found that under section 216(b), "unions lack standing to bring representative suits on behalf of their members under FLSA."[56] Similarly, unions are not proper defendants in FLSA actions. For instance, the overtime requirements apply only to "employers," a term that excludes unions except where the union employs individuals.[57]

### 2. Joinder of Unions in FLSA Actions

As an initial matter, the parties disagree as to whether there is any basis for joining a labor union in an FLSA action. Defendants do not seriously dispute that the Unions are not properly joined as either plaintiffs or defendants.[58] Rather, they contend that the Unions should be joined as "necessary, non-aligned parties."[59] Plaintiffs counter that defendants are "asserting a position that is contrary to law."[60]

Defendants' request must be viewed in the context of FLSA litigation and as plaintiffs note, there is a bias *"against* labor organizations participating in any way in FLSA lawsuits."[61] In other employment-related contexts, the joinder of labor organizations may be proper, particularly where the decision may significantly impact the CBA. There is, however, no clear authority for compelling the participation of a union as a non-aligned party or otherwise, in an FLSA case where the plaintiffs seek money damages from their employers.

Defendants seek to escape this general prohibition on the participation of unions in FLSA actions by contending that the Unions should be joined as neutral "non-

---

**54.** 7 Charles Alan Wright, Arthur C. Miller & Edward H. Cooper, Federal Practice and Procedure § 1620, at 304 (3d ed.2001).

**55.** *Id.* at 313. For instance, where the union and defendant were signatories to a collective bargaining agreement and the plaintiff challenged the enforceability of that contract, the court held that the union was a necessary party to the litigation. *See Ware v. City of Buffalo,* 186 F.Supp.2d 324, 331 (W.D.N.Y. 2001) (section 1983 action).

**56.** *New York Metro Area Postal Union v. Potter,* No. 00 Civ. 8538, 2003 WL 1701909, at *2 (S.D.N.Y. Mar. 31, 2003).

**57.** 29 U.S.C. § 207(a); 29 U.S.C. § 203(d).

**58.** *See* Defendants' Reply Memorandum of Law in Support of Their Motion to Join the Unions as Necessary, Non–Aligned Parties at 1.

**59.** Defendants' Memorandum of Law in Support of Their Motion to Join the Unions as Necessary, Non–Aligned Parties ("Defs. Rule 19(a) Mem.") at 1 (citing *Houston,* 330 F.3d at 298 and *Forsberg v. Pacific Northwest Bell Tel. Co.,* 840 F.2d 1409 (9th Cir.1988)).

**60.** Plaintiffs' Memorandum of Law in Opposition to the Motion to Join the Unions as Necessary, Non–Aligned Parties ("Pls. Rule 19(a) Opp.") at 1.

**61.** *Id.* at 2.

aligned" parties. Significantly, of the relatively few cases·that specifically recognize the concept of joining unions as "non-aligned parties,"[62] none involve FLSA claims relating to overtime compensation.

Defendants offer two cases in support of the proposition that "in appropriate circumstances, the FLSA [ ] permit[s] unions to be parties or to be joined as non-aligned neutral parties."[63] But these cases— Houston[64] and Forsberg[65]—are not persuasive authority and are, in any case, distinguishable. First, as plaintiffs correctly observe, the Houston court "addressed the merits of an FLSA lawsuit brought by a labor organization without even considering the question of whether the labor organization was a proper party to the lawsuit."[66] Second, the Forsberg opinion cited by defendants did not address joinder.[67] Lacking in any rationale supportive of defendants' position, these cases do not support defendants' argument.

Finally, the district court opinion in Forsberg involved joinder in the context of Title VII[68] and the Equal Pay Act.[69] Thus, Forsberg was decided in a slightly different context. But even if the equal pay claim asserted in Forsberg is analogous to the claim asserted here, the cases are distinguishable. Unlike this case, the importance of union participation in Forsberg is immediately evident. The gravamen of the Forsberg complaint was that defendants had paid discriminatory wage rates, which were bargained for and agreed to by the unions themselves. Thus, it was the enforceability of the term negotiated by the union that was at the heart of the dispute. Accordingly, the district court concluded that it was appropriate to "fashion relief" protecting the interests of all of the parties to guarantee "just adjudication" of the matter.[70] By contrast, the central issue presented by plaintiffs' Complaint is whether defendants' policies contravene the FLSA.[71] Thus, Forsberg does

**62.** *See Forsberg v. Pacific Northwest Bell Tel. Co.*, 622 F.Supp. 1147 (D.Or.1985) (realigning the union, which had formerly been joined as a defendant in a Title VII case, as a "non-aligned" party); *Nichols v. Frank*, No. 89 Civ. 635, 1990 WL 134539, at *2 (D.Or. Sept. 10, 1990) (joining the American Postal Workers Union, AFL–CIO as a "non-aligned" party in a Title VII case); *cf. also Acree v. Tyson Bearing Co.*, No. 01 Civ. 175, 2002 WL 463263, at *6 n. 2 (W.D.Ky. Jan. 17, 2002) (denying joinder, but noting that "[j]oinder of the [u]nion, even if appropriate, would be problematic because the [u]nion's interests are not completely aligned with either party.... While this divergence of interests would not justify a court's refusal to join the [u]nion, it has caused some uncertainty over how to align a joined union.").

**63.** Defs. Rule 19(a) Mem. at 7.

**64.** *Houston*, 330 F.3d at 298.

**65.** *Forsberg*, 840 F.2d at 1409.

**66.** Pls. Rule 19(a) Opp. at 3.

**67.** Although defendants cite the Ninth Circuit's decision in *Forsberg*, this opinion did

not address the propriety of the district court's order joining the union as a non-aligned party. *See Forsberg*, 622 F.Supp. at 1147 (joinder order). Rather, the court of appeals affirmed the district court's decision denying class certification and granting summary judgment to defendants. *See Forsberg v. Pacific Northwest Bell Tel. Co.*, 623 F.Supp. 117 (D.Or.1985), *aff'd, Forsberg*, 840 F.2d at 1422. Thus, the Ninth Circuit did not address the joinder of the union as a non-aligned party.

**68.** 42 U.S.C. § 2000e.

**69.** 29 U.S.C. § 206.

**70.** *Forsberg*, 622 F.Supp. at 1150.

**71.** Only one of the five claims—the second count in the Complaint—references the CBAs. In that claim, plaintiffs allege that the "collective bargaining agreements between [d]efendants and the PBA and the DEA do not authorize" defendants' overtime policies. Am. Compl. ¶ 18. Thus, because plaintiffs are primarily seeking to enforce their rights under the FLSA, the adjudication of this claim does

not support defendants' request for joinder under the circumstances presented herein.

■ For the foregoing reasons, there is reason to doubt whether there is any judicial authority to join non-aligned parties in FLSA actions. However, insofar as it is *possible* to join a union in an FLSA action as a non-aligned party, the case law and the statute suggest that this type of joinder should not be granted lightly. Under the facts of this case, joinder is inappropriate.

### 3. Joinder Under Rule 19(a)

#### a. Rule 19(a)(1)

Even if this Court has the authority to join the Unions as non-aligned parties, defendants have failed to establish that the Unions are "necessary" under Rule 19(a)(1). Defendants contend that, absent participation of the Unions, complete relief cannot be afforded to all of the present parties. Specifically, defendants argue that joinder is proper under Rule 19(a)(1), because absent participation by the Unions, complete relief will not be available to those already parties to this action. But defendants' argument lacks merit because plaintiffs seek only one form of relief—monetary damages. This relief can be awarded absent joinder by the labor unions.

#### b. Rule 19(a)(2)

Defendants submit that they are entitled to join the Unions because the Unions claim an interest relating to the subject of the action and their absence in this litigation may either prevent them from protecting that interest or expose defendants to inconsistent obligations.[72] However, the Unions do not claim a legal interest relating to this action.[73] Moreover, defendants' argument that the NYPD will be subject to inconsistent obligations is not persuasive. Defendants do not adequately demonstrate that there is a real possibility that the NYPD would be subject to conflicting obligations regarding the "claimed interest."[74] They argue:

> [T]he NYPD will be subject to the very real risk that the Unions ... will later take positions contrary to the rulings made by the Court in this case, and thereby expose the NYPD to future litigation and inconsistent obligations. For example, the Court may reject plaintiffs' claims in [Count Two] and hold that the NYPD's practices regarding alleged "forced" accrual of compensatory time comply with the FLSA. If the Unions are not parties to this action, however, the Unions could re-litigate the alleged "forced" accrual issue as a violation of the CBAs, or even as a violation of the FLSA.[75]

---

not appear to significantly impact the CBAs. *See* Pls. Rule 19(a) Opp. at 11.

**72.** *See* Defs. Rule 19(a) Mem. at 11.

**73.** Defendants make much of the Unions' involvement in this case—*i.e.*, their retention of plaintiffs' counsel, negotiation of a fee agreement, and posting notice of the collective action on the Internet. *See id.* at 4. However, as plaintiffs note, "[s]uch organizational support, even if financial in nature, is permissible under the FLSA." Pls. Rule 19(a) Opp. at 14 (citing *Arrington v. National Broad. Co.*, 531 F.Supp. 498, 502–03 n. 11 (D.D.C.1982)).

Such assistance does not make the Unions *parties* to the litigation. *See United Food & Commercial Workers Union, Local 1564 of N.M. v. Albertson's, Inc.*, 207 F.3d 1193, 1202 (10th Cir.2000).

**74.** *See* Wright, Miller & Cooper, *supra* note 54, § 1604, at 64 ("The key is whether the possibility of being subject to multiple obligations is real; an unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria.").

**75.** Defs. Rule 19(a) Mem. at 11.

This argument is speculative at best. Here, plaintiffs do not challenge provisions of the CBA themselves, but seek "compensation under the FLSA that is in addition to that required by the [CBA]." [76] Thus, the risk that defendants will be exposed to inconsistent obligations is relatively insignificant. Indeed, defendants do not describe how the *Unions* will be able to relitigate these issues, in light of the fact that they are not proper plaintiffs in an FLSA action.

## IV. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss Count One and to join the Unions are denied. The Clerk of the Court is directed to close these motions [Nos. 108 and 112 on the docket sheet]. A conference will be held in Courtroom 15C on July 9, 2004, at 4:30 p.m.

SO ORDERED.